75198. McNEIL et al. v. COWART et al.
(367 SE2d 291)

McMURRAY, Presiding Judge.
This action arises from a contract for the purchase and sale of

corporate stock. The complaint of plaintiffs McNeil and Dawsey alleges that on September 16, 1983, they entered into an agreement with defendants C. L. Cowart, Randall Cowart, and Cowart's Commercial Supply Company, Inc. by which they were to acquire 52 percent of the outstanding common stock of the corporate defendant. Plaintiffs' complaint also alleged that defendant David Cowart guaranteed the performance of his co-defendants under the agreement. Plaintiffs allege that pursuant to the agreement a closing was set for October 6, 1983, at which they appeared ready, willing and able to comply with the agreement and that defendants breached the agreement by failing to deliver 52 percent of the stock of the corporate defendant. Defendants answered denying any breach of contract or indebtedness to plaintiffs alleging both as a defense and as the basis of a counterclaim, breach of contract and that they were fraudulently induced to enter into the agreement. Defendants alleged that plaintiffs, being cognizant of their relative expertise in the buying and selling of businesses, entered into the agreement "with the sole intention of stealing the business of Defendants away from them . . ."

The case was tried before a jury which returned a verdict in favor of defendants in the amount of $5,672 actual damages, $1.00 exemplary damages and $1.00 attorney fees. Plaintiffs appeal. *Held*:

1. Plaintiffs' first two enumerations of error contend that the trial court erred in failing to direct a verdict in favor of plaintiffs and against defendants on the claim for breach of contract asserted by plaintiffs against defendants and as to the counterclaim of defendants. By enumerations of error 5 and 6 plaintiffs contend the trial court erred in denying their motion for new trial. We find that enumerations of error 1, 2, 5 and 6 are without merit as there is evidence authorizing the jury's verdict under the "any evidence" standard. *United Fed. Savings &c. Assn. of Waycross v. Connell,* 166 Ga. App. 329, 330 (1) (304 SE2d 131); *Wehunt v. Wren's Cross &c. Assn.,* 175 Ga. App. 70, 72 (1) (332 SE2d 368).

Fraud is of itself subtle, and slight circumstances may be sufficient to carry conviction of its existence. OCGA § 23-2-57. *Joseph v. Bray,* 182 Ga. App. 131, 132 (354 SE2d 878). "We are aware that proof of fraud is seldom if ever susceptible of direct proof; thus recourse to circumstantial evidence usually is required. Moreover, we acknowledge that circumstances apparently trivial or almost inconclusive when considered in conjunction may be sufficient to establish proof of fraud. *Durrence v. Durrence,* 224 Ga. 620 (163 SE2d 740); *McGaha v. Kwon,* 161 Ga. App. 216 (288 SE2d 289, 291). Likewise, we proceed under the caveat that it is a matter peculiarly within the province of a jury to determine whether the circumstances establish moral fraud. *Tolar Constr. Co. v. GAF Corp.,* 154 Ga. App. 127 (267 SE2d 635)." *Ketcham v. Franklyn Gesner Fine Paintings,* 181 Ga.

App. 549, 554 (353 SE2d 44).

In the case sub judice, we are confronted with a voluminous transcript of the proceedings in the trial court. While we decline to speculate in regard to the jury's conclusions on the evidence, we do note that there was evidence sufficient to authorize conclusions as follows: The purchase price, for 52 percent of the common stock of the defendant corporation, set in the contract at issue was subject to reduction under specified circumstances. The circumstances which would reduce the purchase price included decreases in the net worth of the defendant corporation at closing or if at closing accounts payable exceeded accounts receivable. The contract also provided that plaintiffs would assume control of the defendant corporation on a date prior to the closing date. The plaintiffs were in fact on the premises and exercising managerial discretion in regard to the day-to-day decisions of the defendant corporation for a substantial period prior to the agreed closing date. While plaintiffs were on the premises several events aroused the suspicions of defendants. The events were an inaccurate inventory, the loss of a substantial number of invoices and the ordering of a quantity of goods by plaintiffs which could have impacted the purchase price of the stock by causing accounts payable to exceed accounts receivable. While the inventory was redone, the invoices found and the order cancelled as to most of the goods ordered by plaintiffs, the surrounding circumstances were sufficient to authorize a jury to conclude that collectively these events and other circumstances including a concurrent fall in the net worth of the defendant corporation reflected a conscious pattern of conduct by plaintiffs intended to reduce their purchase price for the shares of the defendant corporation. The jury was also authorized to conclude that plaintiffs had negotiated and entered the contract at issue with a view to such a scheme. As there was some evidence authorizing the jury's verdict the trial court did not err in denying plaintiffs' motions for directed verdict and motion for new trial.

2. The jury initially returned a verdict in favor of defendants and against plaintiffs in the amount of zero dollars actual damages, one dollar exemplary damages and $5,672 attorney fees. A polling of the jury indicated that the verdict was that of each juror. After the polling, the trial court indicated to the jury that the verdict returned was not a valid verdict, in that the law does not permit an award of exemplary damages and attorney fees where a jury finds no actual damage. The jury was then sent back to the jury room to allow them to return a valid verdict. Subsequently, a note was received from the jury requesting that the court's charge on the verdict be re-read. The jury was returned to the courtroom where the jury foreperson in response to the trial court's query explained that the jury was concerned with the portion of the charge on the verdict relating to actual damages.

The trial court recharged that, "you cannot award exemplary damages and attorney fees if you determine that there are no actual damages." The jury resumed their deliberations and subsequently returned a verdict in favor of defendants and against plaintiffs in the amount of $5,672 actual damages, one dollar exemplary damages and one dollar attorney fees. The jury was again polled indicating that the verdict was that of each juror.

Plaintiffs' third and fourth enumerations of error concern the receipt of the verdict. In enumeration of error 3 plaintiffs complain that the "trial court erred in failing to ascertain, by polling, the intention of the verdict, when so requested, upon returning an invalid verdict." As the jury was polled following each return of a verdict this enumeration apparently relates to the trial court's refusal to further inquire whether the jury intended to award zero actual damages. However, since in a civil case it is discretionary with the trial court whether to allow the jury to be polled at all, it is not error, where the jury was in fact polled, for the trial court to refuse to ask particular questions of individual jurors. *Patillo v. Thompson*, 106 Ga. App. 808, 815 (7 (c)) (128 SE2d 656); *Ludwig v. J. J. Newberry Co.*, 78 Ga. App. 871, 875 (1 (c)) (52 SE2d 485); *Taylor v. Taylor*, 195 Ga. 711 (9) (25 SE2d 506).

In enumeration of error 4 plaintiffs contend the trial court erred in not recharging the jury concerning its verdict that the matter was still entirely open and they could find for either side and in any amount. However, this contention was not raised at trial and will not be considered for the first time on appeal. *Mathis v. Rome Tractor Co.*, 180 Ga. App. 426 (2) (349 SE2d 282); *Chrysler Corp. v. Marinari*, 182 Ga. App. 399, 403 (3) (355 SE2d 719).

3. Defendants' witness Proctor testified that she started working for the defendant corporation in February 1983, that the defendant corporation had purchased a computer and she was hired to set it up, and that among the things she put on the computer was accounts receivable. Witness Proctor testified that she was asked to determine the number of accounts receivable which were not collected within 90 days of the date set for the closing of the purchase and sale of stock under the contract. (Under the contract the purchase price was reduced by the amount of receivables on the closing date not collected within 90 days after the closing.) Witness Proctor testified she determined that the amount of such uncollected receivables was $42,869.43.

Subsequently, plaintiffs moved to strike the testimony of defendants' witness Proctor as to the amount of the accounts receivable. Plaintiffs' motion was grounded on the best evidence rule and thus meritless as neither the existence nor contents of documents were in issue. *Jones v. Sudduth*, 162 Ga. App. 602 (292 SE2d 448); *Michaels*

*v. Kroger Co.*, 172 Ga. App. 280, 284 (1) (322 SE2d 903). That the witness used a computer printout while testifying to refresh her memory did not place evidence or contents of a document in issue. See OCGA § 24-9-69 and *Growth Properties of Fla. v. Wallace*, 168 Ga. App. 893, 899 (3) (310 SE2d 715).

4. Finally, there was no error in the trial court's refusing to give in charge to the jury an instruction that, "I charge you that after a contract is made, neither party to such contract can rescind it merely by giving notice to the other party of his intention to do so, without the agreement or consent of the other, but it may be rescinded with the consent of both parties." The trial court's charge as given adequately covered the circumstances under which a party may avoid the consummation of a contract. Additionally, the requested charge was not adjusted to the evidence in the case sub judice. The trial court did not err in refusing to give the requested charge.

*Judgment affirmed. Sognier and Beasley, JJ., concur.*

DECIDED MARCH 17, 1988.

*Dana L. Jackel*, for appellants.
*John H. Moore, William R. Johnson*, for appellees.