**LORDMANN ENTERPRISES, INC., Plaintiff–Appellant,**

v.

**EQUICOR, INC., Defendant–Appellee.**

No. 93–9271.

United States Court of Appeals, Eleventh Circuit.

Sept. 26, 1994.

Dorothea Lynn Russell, Russell & Herrera, Decatur, GA, Shawn R. Holtzclaw, Kevin R. Armbruster, William M. Ellard, Cushing & Morris, Atlanta, GA, for appellant.

H. Sanders Carter, Jr., Anthony J. McGinley, Carter & Ansley, Atlanta, GA, for appellee.

Before COX, Circuit Judge, MORGAN, Senior Circuit Judge, and COLLIER *, District Judge.

COX, Circuit Judge:

Lordmann Enterprises, Inc. ("Lordmann"), a home health care provider, sued Equicor, Inc. ("Equicor"), an insurer under an ERISA[1] plan, to recover charges for nursing care provided to an Equicor insured. Lordmann asserted four different claims, and the district court granted Equicor summary judgment on all four. The significant issue raised on appeal is whether ERISA preempts Lordmann's Georgia law claim of negligent misrepresentation. We hold that it does not. On the other claims, we affirm the district court's grant of summary judgment in favor of Equicor.

## I. Background

Paula Rebecca Mitchell ("Mitchell") and her daughter Victoria were provided coverage by a group insurance plan issued by First Equicor Life Insurance Company to Mitchell's employer, Hi-Fi Buys, Inc. ("Hi-Fi"). The defendant Equicor administered the plan. The plan provided coverage for thirty days of home nursing care per calendar year. It also provided that Hi-Fi and Equicor could agree for Equicor to cover rehabilitation services not otherwise covered under the plan if an insured became totally disabled because of "severe personal injury," a category that explicitly included neonatal high-risk infants. The First Equicor policy became effective June 1, 1990, and the Mitchells were covered by a policy issued to Hi-Fi by Blue Cross/Blue Shield until that date.

Victoria was born in February 1990 with severe birth defects that required her to spend her first five months in the hospital. After she went home, she needed twelve hours of nursing care a day. Mitchell hired a nurse employed by the plaintiff, Lordmann, to care for Victoria at home. Mitchell then assigned her rights under the insurance plan to Lordmann.

The parties dispute the content of the communications that followed between Lordmann and Equicor. Lordmann contends that three weeks after it began Victoria's care, Susan Marot, Lordmann's chief executive officer, telephoned Equicor to inquire into the extent of Mitchell's coverage under the plan. (R1–18–Ex. 1, Aff. of Susan C. Marot ¶ 9.) Marot spoke to Geri Castagno, an Equicor employee, who informed her that Hi-Fi's group insurance plan would pay 80% of the

---

* Honorable Lacey Alexander Collier, U.S. District Judge for the Northern District of Florida, sitting by designation.

1. Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (1988).

cost of home nursing. (*Id.*) A few days later, Castagno approved Lordmann's billing rate. (*Id.*)

Three months later, Marot again called Castagno to update Equicor on Victoria's condition. (*Id.* ¶ 10.) Castagno told Marot that she could not find where Hi–Fi's plan provided 80% coverage for Victoria's care, but Castagno informed Marot that Equicor's case management office had authority to alter the plan, and that Castagno would arrange for 100% coverage. (*Id.*) Lordmann continued to provide nursing care for Victoria. (*Id.* ¶ 8.)

Six weeks later, Castagno called Marot and told her there was a problem with Victoria's coverage. (*Id.* ¶ 12.) Castagno did not elaborate, but when Marot asked if Lordmann should stop its care, Castagno again said that case management would alter the plan to cover the care. (*Id.*) Later the same day, Castagno called Marot again and informed her that Mitchell had not returned a case management form Castagno had sent. (*Id.*) Marot offered to have Mitchell return the form, but Castagno refused and instead told Marot that she was treating the case as if case management had never been involved. (*Id.*) When Marot asked if she should stop Victoria's care, Castagno again said no, assuring Marot that between Blue Cross/Blue Shield and Equicor, Lordmann's bill would be paid in full. (*Id.*) During this entire period Equicor monitored Lordmann's care for Victoria. (*Id.* ¶ 11.) Equicor never informed Lordmann that the Hi–Fi plan covered only thirty days of home nursing care. (*Id.* ¶ 13.)

Equicor agrees that Marot spoke to Castagno, but Equicor contends that Castagno informed Marot that Equicor would pay for the services only according to the terms of Hi–Fi's group insurance plan. (R1–17–Ex. 15, Defendant's Response to Plaintiff's First Interrogatories ¶ 8.)

Lordmann finished its care for Victoria a few weeks later, in early January, 1991, and sought payment from Equicor. In December, 1991, Equicor paid Lordmann $9952, which was 80% of Lordmann's bill for thirty days of care in 1990 and four days of care (until it ceased) in 1991, less the amount owed by Blue Cross/Blue Shield for the same care. Lordmann also collected $3425 from Blue Cross/Blue Shield, leaving a balance of $59,432.

Lordmann sued Equicor in state court in Georgia, asserting two claims. Count I is a state law claim based upon alleged fraudulent misrepresentation. Count II is a state law claim based upon alleged negligent misrepresentations. Equicor removed to federal court, asserting federal question and diversity jurisdiction. After removal, Lordmann amended its complaint to add two federal claims, both asserted as Mitchell's assignee. Count III is an ERISA claim for benefits under the plan, and Count IV is an ERISA claim based upon the federal common law of equitable estoppel. Equicor moved for summary judgment on all four counts.

The district court granted Equicor's motion in full. It held that ERISA preempted the state law fraud and negligent misrepresentation claims. *Lordmann Enterprises, Inc. v. Equicor, Inc.,* No. 1:92–CV–2000–JOF, Order at 6 (N.D.Ga. October 2, 1993). The court granted summary judgment on the claim for benefits because it found no dispute over the terms of the plan. First, the plan unambiguously provided 80% coverage for thirty days of home nursing care, and Equicor had already paid that amount. *Id.* at 8. Second, although the plan allowed Hi–Fi and Equicor to extend coverage for rehabilitation services to cover Victoria's care, Lordmann had presented no evidence of such an agreement. *Id.* at 10. Finally, the district court held that the plan provisions were unambiguous, and that under Eleventh Circuit precedent a claim based upon federal common law equitable estoppel is available only in cases in which the insurer interprets ambiguous plan provisions. *Id.* at 11. This appeal follows.

## II. Issues and Standard of Review

In this appeal, Lordmann challenges the district court's grant of summary

judgment on all four counts. We review grants of summary judgment de novo. *Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1377 (11th Cir.1994). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court reviewing the motion must consider all evidence in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### III. Discussion

#### A. State Law Claims

Lordmann contends on appeal that ERISA does not preempt Counts I and II, its state law claims of fraud and negligent misrepresentation. In response, Equicor argues that ERISA does preempt both claims, and in the alternative, that even if ERISA does not preempt them, summary judgment was appropriate because Lordmann had failed to show it could prevail under Georgia law. We agree with Equicor's state law argument that Lordmann has failed to show all the elements of the fraud claim, but we do not find state law to be dispositive on the negligent misrepresentation claim. Thus, on that claim we must reach the preemption issue, and we hold that ERISA does not preempt a third-party health care provider's negligent misrepresentation claim against an ERISA plan administrator.

#### 1. Fraud

◼ Equicor contends that summary judgment is appropriate on the fraud claim, even if ERISA does not preempt it, because Lordmann has failed to present any evidence of scienter, a necessary element of fraud under Georgia law. *See Georgia–Pacific Corp. v. Lieberam,* 959 F.2d 901, 907 (11th Cir.1992) (listing elements of fraud under Georgia law). In response, Lordmann argues that under Georgia law scienter may be inferred from surrounding circumstances. *McNeil v. Cowart,* 186 Ga.App. 411, 367 S.E.2d 291, 293 (1988). However, scienter is not automatically inferable from the fact that the defendant made a misrepresentation. *See Shaw v. Cook County Fed. Sav. & Loan Ass'n,* 139 Ga.App. 419, 228 S.E.2d 326, 328 (1976) (mere fact of savings & loan's misrepresentation to borrower that no liens existed on her house not sufficient to support fraud claim). As was the case in *Shaw,* Lordmann has pointed to no particular facts that could support an inference of scienter in this case. Even under Georgia's lenient standard of proof for scienter, Lordmann has failed to carry its burden on an essential element of its claim. Thus, the district court properly granted summary judgment on Count I. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

#### 2. Negligent Misrepresentation

◼ Equicor argues that it is also entitled to summary judgment on the negligent misrepresentation claim because under Georgia law, statements as to the nature of insurance coverage are opinions of law and therefore not actionable for misrepresentation. *See Marett Properties, Inc. v. Prudential Ins. Co.,* 167 Ga.App. 631, 307 S.E.2d 69, 72 (1983); *Parris & Son, Inc. v. Campbell,* 128 Ga.App. 165, 196 S.E.2d 334, 337 (1973). However, as Lordmann points out, Georgia courts have expressly refrained from deciding whether this principle would deny recovery for misrepresentation when the plaintiff is neither the insured nor subrogated to the rights of the insured. *Home Ins. Co. v. North River Ins. Co.,* 192 Ga.App. 551, 385 S.E.2d 736, 741 (1989). Because it is possible that Lordmann could prevail on its state law negligent misrepresentation claim, we must determine whether ERISA preempts such a claim.[2]

ERISA § 514(a) preempts all state laws insofar as they "relate to" any employee

---

2. The district court did not address the state law claims because it found they were preempted by ERISA. *See Lordmann Enterprises, Inc. v. Equicor, Inc.,* No. 1:92–CV–2000–JOF, Order at 4–6 (N.D.Ga. Oct. 2, 1993). Therefore, we express no opinion on the merits of the state law negligent misrepresentation claim and leave that issue for the district court to consider on remand. *See*

benefit plan covered by the Act. 29 U.S.C. § 1144(a) (1988). The parties do not challenge the district court's conclusion that the Hi–Fi group insurance plan is covered by ERISA. *See* 29 U.S.C. § 1002(1) (1988); *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982). Thus, the question is whether Lordmann's negligent misrepresentation claim "relates to" the group insurance plan. We conclude that it does not.

State law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). However, some state law may affect an ERISA plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. Based on this Supreme Court interpretation of the statute, both the Fifth and the Tenth Circuits have found that state law claims brought by health care providers against plan insurers too tenuously affect ERISA plans to be preempted by the Act. *Hospice of Metro Denver, Inc. v. Group Health Ins.,* 944 F.2d 752 (10th Cir.1991); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990). We agree.

*Memorial Hospital* presented facts very similar to Lordmann's. In that case, Gloria Echols, a covered dependent under a health insurance policy issued by Northbrook Life Insurance Company, sought care at Memorial Hospital. The hospital telephoned Northbrook Life to verify Echols's coverage, and a Northbrook Life employee confirmed that Echols was covered. The hospital then admitted Echols, who remained in the hospital for two months at a cost of more than $100,000. When the hospital submitted its bill, Northbrook Life informed the hospital of Echols's ineligibility and denied the claim. *Id.* at 238. The hospital sued, alleging among other claims a violation of Texas Insurance Code article 21.21, which the court characterized as a Texas codification of negligent misrepresentation. *Id.* at 244.

*Strength v. Hubert,* 854 F.2d 421, 426 (11th Cir.

The court concluded that ERISA did not preempt the statutory negligent misrepresentation claim for two primary reasons. First, preemption does not serve Congress's purpose for ERISA. *Id.* at 245. Congress enacted ERISA to protect the interests of employees and beneficiaries covered by benefit plans. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). Preemption in a third-party health care provider case would defeat rather than promote this goal. The "commercial realities" of the health care industry require that health care providers be able to rely on insurers' representations as to coverage. *Memorial Hosp.,* 904 F.2d at 246. If ERISA preempts their potential causes of action for misrepresentation, health care providers can no longer rely as freely and must either deny care or raise fees to protect themselves against the risk of noncoverage. In that event, the employees whom Congress sought to protect would find medical treatment more difficult to obtain. *Id.* Moreover, in this context disputes do not arise between the health care provider and the insurer under an ERISA plan, but "precisely because there is no ERISA plan coverage." *Id.*

Second, the *Memorial Hospital* court reasoned that health care providers were parties beyond ERISA's scope. *See id.* at 248–49. The Supreme Court has held that ERISA does not preempt "run-of-the-mill" claims by non-ERISA entities against ERISA plans, *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 832–33, 108 S.Ct. 2182, 2186–87, 100 L.Ed.2d 836 (1988), and thus ERISA a fortiori does not preempt claims by health care providers against a plan fiduciary. *Memorial Hosp.,* 904 F.2d at 249. Moreover, a health care provider's claim against a provider of insurance under the plan affects the relationship between the principal ERISA entities at best only indirectly. *Id.* at 249. Finally, health care providers were not parties to the ERISA "bargain." *Id.* at 249. When employers and employees gave up state law causes of action

1988).

because of ERISA, they received federal causes of action under ERISA in exchange. On the other hand, ERISA does not provide a cause of action for aggrieved health care providers that treat ERISA participants. *Id.; see* ERISA § 502(a), 29 U.S.C. § 1132(a) (1988 & Supp. IV 1992).

Finding the *Memorial Hospital* court's reasoning persuasive, we hold that ERISA does not preempt a health care provider's negligent misrepresentation claim against an insurer under an ERISA plan. We thus reverse the district court's grant of summary judgment on Count II and remand for further proceedings.

**B.  Derivative Claim**

■  Lordmann argues that the district court erred in granting summary judgment on its claim as Mitchell's assignee under the Hi–Fi group insurance plan. The plan contains two provisions that Lordmann claims entitle it to payment. The first provides 80% coverage for the first thirty days of home nursing coverage in each calendar year. Lordmann does not dispute that Equicor has paid the amount due under that provision. However, Lordmann insists that it is also entitled to recover as Mitchell's assignee under a term covering rehabilitation services. The plan provides:

This applies only to a person who: (a) is insured for Health Care Benefits; and (b) while so insured has suffered a severe personal injury or sickness.[3] If he or she becomes totally disabled due to such injury or sickness, the Employer [Hi–Fi] and the Company [Equicor] may agree that:

1.  The Company pay benefits for reasonable and customary charges for rehabilitation services and supplies furnished to such person; and

2.  Such benefits will be paid to the extent that they are in excess of the total benefits payable for such charges under all other parts of the plan.... The amount of such benefits will be determined by the Company.

(R1–17–Ex. 3, Plan Booklet at 16.) The provision unambiguously requires that Equicor and Hi–Fi agree for the additional benefits to become available. Lordmann argues that Castagno's representations to Marot were sufficient to put in issue the existence of an agreement. We disagree. The provision requires that *both* Hi–Fi *and* Equicor agree, and Lordmann has not presented evidence to suggest that Hi–Fi assented to Equicor's coverage of Victoria's care.[4] The district court was therefore correct in granting summary judgment for Equicor on Count III.

**C.  Equitable Estoppel**

■  ERISA forbids oral modification of plan terms. *Nachwalter v. Christie,* 805 F.2d 956, 959 (11th Cir.1986). However, this court has recognized a cause of action for equitable estoppel when a plan administrator makes a representation that interprets, rather than modifies, an ambiguous term of the plan. *Alday v. Container Corp.,* 906 F.2d 660, 666 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). Lordmann argues that Castagno's representations were interpretations of the rehabilitative services provision, and that therefore Equicor should be estopped from asserting an alternate interpretation. We disagree.

In *Kane,* the provision that formed the basis of the administrator's representation was ambiguous.[5] *Id.* at 1286. The provision Lordmann relies upon to contend that Cas-

---

3.  The plan gives an exclusive list of "severe personal injur[ies] or sickness[es]." "Neonatal high risk infants" appears on the list. (R1–17–Ex. 3, Plan Booklet at 16.)

4.  We note that the benefit booklet does not define "rehabilitation services," but Equicor has not

argued that home nursing care for a newborn is not a "rehabilitation service."

5.  In *Kane,* two terms were at issue. One provided that "[f]ull time employees ... and their eligible dependents will be covered under the plan ... on the first day of the month in which the employee will complete a Term of Employment

tagno was interpreting the plan, rather than modifying it, is unambiguous. The rehabilitation services provision clearly requires that Hi–Fi and Equicor agree to extend coverage to long-term rehabilitation services. Lordmann has offered no evidence of any agreement between Hi–Fi and Equicor. Without an agreement under this provision, we must view any statement made by Equicor concerning the provision as a modification of the plan rather than an interpretation of the extent of an agreement between Hi–Fi and Equicor. Thus, *Kane* does not apply, and this case falls under *Nachwalter*'s rule against oral modifications of ERISA plans. Summary judgment was appropriate on Count IV.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment as to Counts I, III, and IV. However, we REVERSE summary judgment as to Count II, the negligent misrepresentation claim, and REMAND for further proceedings.

AFFIRMED in part; REVERSED and REMANDED in part.

of six (6) months. No benefits are covered for charges incurred during a continuous hospital confinement which commenced prior to the effective date of coverage...." *Kane,* 893 F.2d at 1285–86. Another provided that adopted children became eligible dependents upon the commencement of formal adoption proceedings. *Id.* at 1284 n. 1. The plaintiff, an employee covered by the plan, had adopted a hospitalized newborn after the insurance plan administrator had assured her that the child's medical care would be covered. After the child was released from the hospital, however, the insurer denied the claim, contending that the child was already hospitalized on the effective date of coverage (the date of adoption). The *Kane* court found that the provision defining the effective date of coverage could be read two ways, yielding two possible outcomes: an adoptee's coverage could become effective when the employee had worked six months, or an adoptee's coverage could not take effect until the parents instituted formal adoption proceedings. *Id.* at 1286.