**Danielle J. CLARK, Plaintiff,**

v.

**J. Raymond CLARK, Defendant.**

**Civil Action No. CV290–508.**

United States District Court,
S.D. Georgia,
Brunswick Division.

Jan. 29, 1997.

See also 702 F.Supp. 4; 905 F.2d 389 (D.C.Cir.1990).

tirement plan pursuant to a written divorce settlement agreement. Currently before the Court are cross-motions for summary judgment filed by both parties pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTS

Basically, the case at bar is a twenty year old dispute between an angry former husband and his disgruntled former wife concerning the execution of the terms of their written separation agreement. In March, 1976, after thirty years of marriage, Plaintiff and Defendant executed a written separation and property settlement agreement. Thereafter, in February, 1979, Plaintiff and Defendant were officially divorced in the District of Columbia.

In November, 1986, Defendant withdrew a lump sum total of $279,637.56 from his pension fund. Subsequently, Plaintiff filed an action in the Superior Court against her former husband requesting her half interest in his Keogh retirement plan, pursuant to the express terms of the settlement agreement.[1] Defendant asserted that the Superior Court was without subject matter jurisdiction, claiming that federal, not state, law controlled.[2] Thus, Defendant filed suit in the United States District Court for the District of Columbia ("district court") against the Superior Court, seeking to enjoin the Superior Court from adjudicating Plaintiff's case, claiming a lack of subject matter jurisdiction. *See Clark v. Superior Court of the District of Columbia,* 702 F.Supp. 4 (D.D.C.1988) ("*Clark I* ").

In November, 1988, the district court ruled in favor of the Superior Court, determining that the Superior Court had concurrent subject matter jurisdiction over the merits of the

Tommy J. Lee, Lee & Macmillan, St. Simons Island, GA, for Plaintiff.

J. Raymond Clark, St. Simons Island, GA, pro se.

### ORDER

ALAIMO, District Judge.

In August, 1990, Plaintiff, Danielle J. Clark, brought this action against her former husband, Defendant, J. Raymond Clark, to enforce a judgment of the Superior Court of the District of Columbia, Family Division, Domestic Relations Branch ("Superior Court"), awarding her an interest in his re-

1. The written settlement agreement provides that [i]t is agreed that all payments made by Husband under the so-called Keogh Plan (Qualified Retirement Plan) in the past and to be made in the future, are joint property of the parties. At such time as the Husband elects to receive benefits under this plan, such benefits when received by Husband shall be divided equally between the parties and any such payments shall be considered to be alimony at that time.... *Clark v. Superior Court of the District of Columbia,* 702 F.Supp. 4, 5 n. 1 (D.D.C.1988) (re-

printing the relevant portion of the settlement agreement).

2. The term "state" is used as a term of art in this Order to include the District of Columbia. While not officially a state, the parties' primary argument is whether federal law, under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), or "state" law controls. The "state" law that would control would be the law of the District of Columbia.

case. Defendant appealed and the United States Court of Appeals for the District of Columbia Circuit, on its own motion, affirmed the holding of the district court. *See Clark v. Superior Court of the District of Columbia,* 905 F.2d 389 (D.C.Cir.1990) (*"Clark II"*).

On December 14, 1989, prior to the resolution of Defendant's appeal in *Clark I,* but based on the grant of concurrent jurisdiction from the district court in *Clark I,* the Superior Court entered an order in Plaintiff's favor, awarding her over $139,000 as her share of Defendant's lump sum payment.[3] The Superior Court's analysis was based upon principles of state contract law, not federal pension law.

On August 28, 1990, Plaintiff filed a complaint asking the Court to enforce the Superior Court's judgment, since her former husband had moved to southern Georgia.[4] However, given that Defendant filed an appeal of the Superior Court's decree, the Court entered an Order on March 8, 1991, staying this entire matter pending resolution of the appeal. On October 28, 1991, the Court entered another Order retaining jurisdiction over this matter, once the appeal became final, in order to proceed to final disposition.

In January, 1992, Defendant filed a motion to re-open the case for the limited purpose of filing amended and supplemental counterclaims. On January 27, 1992, the Court granted Defendant's motion and re-opened the case for the limited purpose of allowing Defendant to file his amended and supplemental counterclaim for defamation of character against his former wife. On February 16, 1995, the Court denied Defendant's motion to reactivate the proceedings and allow limited discovery concerning his counterclaim for defamation.

On May 16, 1996, the Court of Appeals for the District of Columbia entered its judgment in this matter. On August 5, 1996, the Court of Appeals for the District of Columbia denied Defendant's petition for Rehearing En Banc.

Thereafter, Defendant filed several motions with the Court, including Defendant's motion (1) to reactivate the proceedings in the case, (2) to grant limited discovery, and (3) to order Plaintiff to show cause why her complaint should not be dismissed. On October 23, 1996, the Court granted Defendant's motion to reactivate the proceedings, granted in part and denied in part Defendant's motion requesting limited discovery, and denied Defendant's motion requesting that Plaintiff show cause why her complaint should not be dismissed.

## DISCUSSION

### I. Summary Judgment

Summary judgment requires the movant, in this case both Plaintiff and Defendant on their respective claims and counterclaims, to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

---

**3.** The Court recognizes that Plaintiff's award of over $139,000 was reduced to $118,743 by the Superior Court, which recognized that Defendant was entitled to a credit for taxes paid on the amount he originally received. *See Clark v. Clark,* No. D2976–86 (Sup.Ct.D.C. Apr. 21, 1995).

**4.** On October 5, 1990, Defendant answered Plaintiff's complaint and also filed a counter-

claim against his former wife. Defendant's counterclaim asserted that Plaintiff was indebted to him for his interest in real property owned by them as tenants-in-common. He claimed that she had not accounted for past rental profits and that he was due his share of the value of the property from which he claims to have been ousted.

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences on a particular issue will be made in favor of the non-movant with respect to that issue. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992). Additionally, a "court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible'." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996). Furthermore, when the evidence is only circumstantial, summary judgment may be granted when a court "concludes that no reasonable jury may infer from the assumed facts the conclusions upon which the non-movant's claim rests." *Id.* In this case, there are virtually no remaining factual disputes. At this stage in this ten year old law suit, the issues for resolution are legal, rather than factual.

## II. *ERISA Preemption*

Defendant forcefully asserts that this case never should have been entertained by any court other than a federal court, based upon the anti-alienation, preemption, and jurisdictional provisions within ERISA. *See* 29 U.S.C. §§ 1056(d), 1144(a), 1132(e). Defendant also contends that the Court should not afford full faith and credit to the judgments of the state courts, since those courts did not have subject matter jurisdiction over his case. Finally, Defendant contends that the former judgments of the state and federal courts are not *res judicata* against him.

Defendant, however, failed to inform the Court in his most recent set of legal briefs that he has already lodged the identical arguments in a sister federal court. *See Clark I*, 702 F.Supp. at 4. Basing its analysis on Supreme Court doctrine, the 1984 amendments to ERISA, and the language of ERISA itself, the district court in *Clark I* held that "jurisdiction is not exclusive, and is

at most concurrent in this court. For reasons of comity, this court declines to exercise concurrent jurisdiction and finds that an injunction against [the] Superior Court would be improper where jurisdiction *is also proper in that court.*" *Id.* at 9 (emphasis added). On appeal, the Circuit Court clarified the matter even further, albeit in a brief opinion, by stating that ERISA

> is inapplicable to the instant case because the funds at issue do not constitute benefits under the protection of an ERISA Plan. Hence, both the anti-alienation provision and general preemption clause of ERISA are *inapplicable to this case* . . . . [Defendant] received his benefits in a lump sum and therefore no longer "is or may be entitled to a benefit" under the Act.

*Clark II*, 905 F.2d at 389 (emphasis added) (citing 29 U.S.C. § 1002(7); *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.1986), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)).

Although not binding precedent, the Court finds instructive the language in *Kuntz v. Reese*, 785 F.2d at 1411. In *Reese*, the court determined that a group of former employees could not sue the employer for damages alleging breach of fiduciary duty and nondisclosure of pension documents. The court succinctly states that "[w]e are now persuaded that the Kuntz plaintiffs are not participants because, as former employees whose vested benefits under the plan *have already been distributed in a lump sum*, [they] were not 'eligible to receive a benefit,' and were not likely to become eligible to receive a benefit, at the time they filed suit." *Id.* (emphasis added).[5]

The court further states that "[f]ormer employees who have neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits simply do not fit within the 'may become eligible' language of [ERISA]." *Id.; see also Callough v. E.I. DuPont de Nemours*, 941

---

5. The Court notes that the holding in *Reese* has been slightly modified by statute and case law, but with no effect on its application to this case. *See Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1454 (9th Cir.1995) (recognizing that in passing the Pension Annuitants Protection Act of 1994, Pub.L. No. 103–401 (Oct. 22, 1994), amending

29 U.S.C. § 1132(a), Congress clarified that former pension plan participants or beneficiaries of terminated plans do, in fact, have standing to sue in the case of a fiduciary breach involving the purchase of insurance contracts or annuities), *cert. denied,* —— U.S. ——, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995).

F.Supp. 1223, 1232 n. 10 (N.D.Ga.1996) (following the principle in *Kuntz* that only those pension plan participants with a "colorable claim" to vested benefits can maintain a suit based on ERISA); *accord Fernandez v. Bank of Dahlonega,* 217 Ga.App. 739, 459 S.E.2d 424, 428 (1995) (stating that once ERISA plan benefits have been "actually distributed," the participants or former participants cannot bring an ERISA suit to recover funds).

In support of his argument, Defendant cites to two Supreme Court cases, *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). While Defendant is correct in stating that these cases construe broadly the preemption and civil enforcement provisions of ERISA, upon closer examination of the principles established in those cases, it is clear that they are distinguishable from the present case.

In both *Dedeaux* and *Taylor,* two unrelated employees sought health care coverage from their respective employers pursuant to the terms of the employers' existing benefits plans. Once a controversy developed between the employees and the employers concerning coverage under the plans, the employees filed suit claiming violations of state, not federal, law.[6] In both cases, the Supreme Court determined that ERISA had a broad preemptive scope and that its terms controlled the merits of both cases.

However, in *Dedeaux,* the Supreme Court also noted that in determining which state laws are preempted under ERISA, a court should take a "common-sense view" of the language of the statute. *Dedeaux,* 481 U.S. at 48, 107 S.Ct. at 1553, 95 L.Ed.2d at 48.

Furthermore, the two cases involved claims for benefits under ERISA-regulated plans by employees or former employees, and the Supreme Court stated that "all suits by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions...." *Id.* at 481 U.S. at 56, 107 S.Ct. at 1557, 95 L.Ed.2d at 53.

▪ In this case, as expressed in *Reese,* Defendant was no longer entitled to benefits as a participant under the plan once he took his fully vested, lump sum payment.[7] If this suit concerned Defendant's denial of benefits, or some other cause of action against the American Bar Association, which operated the pension plan from which Defendant received benefits, then *Dedeaux* and *Taylor* would require resolution of Defendant's claims in federal court under ERISA. *See also Morstein v. National Ins. Servs., Inc.,* 93 F.3d 715 (11th Cir.1996) (construing the "related to" provisions of ERISA's preemption section and restricting the interpretation of ERISA preemption), *cert. denied,* —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Given the dispute involved herein, the two Supreme Court cases cited by Defendant are almost entirely inapplicable. Thus, the Court finds that the prior judgments rendered by the Superior Court are not

---

6. In *Dedeaux,* the employee sued his employer in federal court based on diversity of citizenship and, therefore, based his claims on Mississippi law. *Dedeaux,* 481 U.S. at 43, 107 S.Ct. at 1550, 95 L.Ed.2d at 45. In *Taylor,* the aggrieved employee filed suit against General Motors and metropolitan Life in a Michigan state court, seeking compensatory damages for breach of contract, reimplementation of disability benefits, and money "contractually" owed to the employee. *Taylor,* 481 U.S. at 61, 107 S.Ct. at 1545, 95 L.Ed.2d at 61. Taylor's case was removed to federal district court, which removal was eventually affirmed by the Supreme Court.

7. Under ERISA, the term "participant" includes any employee or former employee of an employer, or any member or former member of an employee organization, who *is or may be-*

come eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7)(emphasis added).

Pursuant to the terms of the statute, Defendant was not considered a plan participant at the time that his former wife filed suit against him under the separation agreement. Plaintiff filed suit on August 28, 1990. (*See* Compl. at 1.) Defendant received his lump sum payment of $279,637.56 in November, 1986, well before this action was initiated. Thus, as of November, 1986, Defendant was no longer a "participant" in a plan subject to ERISA. He no longer was eligible to receive any pension benefits.

preempted by ERISA. Defendant's arguments on this point are without merit.

### III. *Res Judicata*

■ Defendant also argues that the prior holdings against him in the federal courts are not *res judicata* and, therefore, the Court should not give full faith and credit to those decisions. While the Court disagrees and believes that the holdings of those courts are, in fact, *res judicata*, the Court also is persuaded by the reasoning and analysis of those opinions. Thus, the Court adopts the analyses in *Clark I*, *Clark II*, and *Reese* and finds that a determination of *res judicata* is largely unnecessary.

■ However, in order to ensure fairness to the parties, the Court has considered fully Defendant's argument concerning *res judicata*. To establish the preclusive effect of one judgment based on the principles of *res judicata*, a party must show "(1) identity of the parties, (2) identity of the causes of action, and (3) adjudication on the merits by a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the relevant issues." *Akin v. PAFEC, Ltd.*, 991 F.2d 1550, 1556 (11th Cir.1993). Defendant contends that (1) the Superior Court, not Plaintiff, was the party in the first case, (2) that the only issue involved in the first case was jurisdiction, whereas here, Defendant claims that jurisdiction is only one bar to giving full faith and credit to a prior judgment, and (3) that he was denied the opportunity to pursue his appeal in a normal manner.

In this analysis, Defendant's only viable argument is that the Superior Court, and not Plaintiff, was the party in the federal cases that he filed. The Court has already determined that the Superior Court was "a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the

relevant issues." *Id.* Furthermore, the identity of the causes of action were virtually identical to those asserted herein. Defendant also had the opportunity to litigate fully the issues at every stage of his prior federal law suit.[8]

Thus, unless Defendant can persuade the Court that the first element of *res judicata* has not been shown, then the former judgments of the federal courts in the District of Columbia must stand and be afforded full faith and credit.

■ Generally, in order for the doctrine of *res judicata* to preclude re-litigation of claims, the parties in the first action must be identical, or "in privity" with the parties in the second action. Or, the parties in the second action must "have had sufficient identity of interests with a party so that [the party] may be treated as a party for preclusion purposes." *Riddle v. Cerro Wire and Cable Group, Inc.*, 902 F.2d 918 (11th Cir. 1990). While the Superior Court and Plaintiff are obviously not the same party, they did have identical interests in *Clark I* and *Clark II*. The Superior Court was determined to ensure that its jurisdiction over the property settlement agreement was not preempted by ERISA. Plaintiff, had she been named as a party, would have sought the identical determination from both federal courts. But for the Superior Court's jurisdiction over Plaintiff's claims, she would not have a matter to enforce now in the Court.

■ *Res judicata* operates to bar re-litigation of claims "which were either expressly or by necessary implication adjudicated in the first [case]." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Moreover, the doctrine of *res judicata* "serves vital public interests beyond any individual judge's ad hoc deter-

---

8. As noted in *Clark II*, the court issued several "show cause" orders, leading to Defendant's motion for an "emergency stay." *Clark II*, 905 F.2d at 389. After considering fully all of the briefs filed by both parties, the Circuit Court for the District of Columbia Circuit summarily affirmed the district court's opinion, with a brief opinion of its own. *Id.* Moreover, the Circuit Court even withheld issuance of its mandate, expressly allowing Defendant seven days to petition for a rehearing. While the Court remains somewhat unclear concerning all of the facts surrounding the necessity of another federal court to issue show cause orders in *Clark II*, the Court is convinced, by the language in *Clark II*, that Defendant had a full opportunity to litigate the issues that *he* brought before that federal court.

mination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" *Baptiste v. Commissioner of Internal Revenue,* 29 F.3d 1533, 1540 (11th Cir.1994). *Res judicata* is more than simply a "matter of practice or procedure inherited from a more technical time.... It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." *Id.* In the case at bar, fundamental and substantial justice weigh heavily in favor of applying the doctrine of *res judicata* to the once-litigated claims in *Clark I* and *Clark II.*

Accordingly, by express adoption and via the doctrine of *res judicata,* Defendant's contentions that the Superior Court had no jurisdiction over this matter, thereby denying the judgments in *Clark I* and *Clark II* to full faith and credit in the case at bar, are without merit.

### IV. *Anti–Alienation*

■ Within ERISA, there exists a broad statutory provision prohibiting the assignment or alienation of pension benefits. *See* 29 U.S.C. § 1056(d). The seminal case interpreting this provision is *Guidry v. Sheet Metal Workers Nat' Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). In *Guidry,* the chief executive officer of the union and trustee of the pension fund pled guilty to a charge of embezzlement and stipulated to the payment of $275,000 for his misdeeds. Although entitled to benefits under the pension plan, the Union contended that Guidry forfeited the right to those benefits. The district court determined that the pension benefits were not forfeited due to Guidry's misconduct, but that a constructive trust in favor of the Union was proper. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 641 F.Supp. 360 (D.Colo.1986). The United States Court of Appeals for the Tenth Circuit affirmed the district court. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 856 F.2d 1457 (10th Cir.1988).

In *Guidry,* the Supreme Court reversed, stating that under ERISA, the imposition of an equitable measure, such as a constructive trust, is improper, unless specifically allowed as a statutory exception within ERISA. *See Guidry,* 493 U.S. at 376–77, 110 S.Ct. at 687, 107 L.Ed.2d at 795. The Supreme Court recognized that there is no

generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. [The Act] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them."

*Id.* at 376, 110 S.Ct. at 687, 107 L.Ed.2d at 795.

The Supreme Court continued by stating that "there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension." *Id.*

While Defendant claims that *Guidry* fully supports his position that ERISA forbids any payment to his former wife from the lump sum payment he received, the Court disagrees. In fact, the Court construes *Guidry* as supporting Plaintiff's claim for her rightful share of the lump sum payment in this matter. In both cases, *Guidry* and here, the pension fund clearly owed the former employee benefits under the ERISA-approved pension plan. In *Guidry,* however, the lower federal courts unilaterally prevented Guidry, under the guise of a fictional, equitable measure known as a "constructive trust," from receiving any money from his pension fund. Thus, Guidry had no control over monies that were rightfully his. Significantly, the Supreme Court also was concerned about protecting the blameless potential dependents counting on those funds; *e.g.,* spouses, children, and grandchildren.

In the case at bar, Defendant cannot claim that his funds were swept from his control in a unilateral manner. In fact, Defendant *voluntarily* and knowingly agreed in a written separation agreement that he would give his

former wife half of the funds received from the pension when he elected to receive those benefits. In fact, Defendant *voluntarily* agreed to consider those funds "alimony" and not pension benefits. As was the Supreme Court, the Court is concerned with protecting the stream of income to which Plaintiff is unquestionably entitled. Unlike in the lower courts in *Guidry,* here there has been no overreaching or usurpation of Defendant's right to his pension benefits by a federal court, state court, or any other entity.

## V. *Defamation Claims*

 Defendant claims that Plaintiff defamed him in two respects. First, Defendant claims that Plaintiff forwarded a letter to the District of Columbia Bar Counsel ("Bar Counsel") alleging unethical behavior on Defendant's part. Bar Counsel received that letter on January 16, 1991, and, on January 23, 1991, informed Defendant of that receipt. Defendant filed his counterclaim alleging defamation on January 27, 1992. Plaintiff erroneously contends that the counterclaim was filed on January 2, 1992. Furthermore, Plaintiff also erroneously contends that the defamatory statement occurred, if at all, on October 20, 1990, the date that the letter was written by Plaintiff to Bar Counsel. An action for defamation occurs, if at all, when the defamatory statement is published. *Deal v. Builders Transp., Inc.,* 192 Ga.App. 511, 385 S.E.2d 293, 293–94 (1989). The statute of limitations in Georgia for defamation is one year. *See* Ga.Code Ann. § 9–3–33 (Michie 1982). Thus, although Plaintiff is correct that the counterclaim for defamation based on the letter is barred, Plaintiff's application of the law to the facts of this case is incorrect. Defendant was required to bring his claim for defamation on or before January 16, 1992. Defendant missed the statute of limitations by eleven days. Defendant also asserts that Plaintiff filed another defamatory letter on March 20, 1991, alleging further misconduct by Defendant. However, Defendant has not produced that letter to the Court and has not amended his counterclaim to include this claim. Therefore, his defamation claim based on the March 20, 1991, letter is also barred.

 With respect to the alleged defamation contained in the stipulation filed with the Superior Court, Plaintiff asserts that such document is "privileged." (*See* Pl.'s Mot. for Summ. J. at 8 (citing Ga.Code Ann. § 51–5–8).) Plaintiff is correct in her assertion. Section 51–5–8 states that "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged." Ga.Code. Ann. § 51–5–8 (Michie 1982). The document upon which Defendant bases his claim of defamation is an "26B4 Stipulation" concerning proposed witness testimony that was filed with the Superior Court, a court of competent jurisdiction in the original controversy leading to the case at bar. The Court has already determined that the Superior Court was vested with jurisdiction to hear the merits of that case. Accordingly, any statements contained within that stipulation are privileged and cannot support a claim for defamation. Plaintiff's motion for summary judgment concerning Defendant's counterclaim for defamation will be granted.

## VI. *Prior Debts*

The litigation in the Superior Court resulted in a determination that Plaintiff owed Defendant $28,186, plus interest, and that Defendant owed Plaintiff $26,000 in alimony, which Defendant apparently has never paid. Plaintiff made payments in the amount of $3,600, and Defendant sought and received a writ of attachment from Plaintiff's bank account in the amount of $18,935.51. Plaintiff concedes that the amount owing to Defendant, if any, would be $5,650.49. (*See* Pl.'s Resp. to Def.'s Objections to Pl.'s S. of Material Facts and Pl.'s Supp. Br. at 4.) The Court is unclear why Defendant is pursuing this matter with such vigor, given that Plaintiff's prior debt is insubstantial, given her prior payments, as compared to his outstanding alimony debt.

 Plaintiff asserts that the parties, by their actions, have treated these "roughly" proportional amounts as being "offset" against each other. Neither party has sought collection of the funds to which he or

she may be entitled according to the Superior Court judgment.[9] Plaintiff further asserts that Defendant never has included this claim as a counterclaim in any prior litigation between the parties. This final assertion is incorrect. In October, 1990, Defendant included within his Answer a counterclaim in which he asserted that Plaintiff owed him this prior debt, albeit for a different amount. (*See* Def.'s Answer and Countercls. ¶ 23.) Defendant, on the other hand, acknowledges both debts, as well as Plaintiff's payments. Apparently, Defendant attempted to resolve this matter by stipulation, which was rejected by Plaintiff. (See Def.'s Reply to Br. in Opp'n to Def.'s Mot. for Summ. J. at 10.)

Both parties refer to these prior debts as partially "offsetting" one another. (*Id.* at 9; *see also* Pl.'s Resp. to Def.'s Objections to Pl.'s S. of Material Facts and Pl.'s Supp. Br. at 5 (citing Ga.Code Ann. § 9–13–75, which is Georgia's "offsetting judgment" statute.)) [10] Given that both parties agree that the Superior Court awarded Plaintiff $26,000 and awarded Defendant $28,186, there is no reason why the Court should not offset these amounts. In fact, after reading the parties' briefs, it appears that both Plaintiff and Defendant are seeking an offset of these prior debts.

The record before the Court establishes that Plaintiff paid $3,600 towards her debt and that Defendant collected another $18,935.51, leaving Plaintiff in debt to Defendant in the amount of $5,650.49. Offsetting this against the $26,000 that Defendant otherwise owes to Plaintiff, which debt Defendant acknowledges, the Court finds that Defendant owes Plaintiff a principal amount of $20,349.51. The Court realizes that each party owes the other interest on their respective debts, likely at differing rates for differing periods of time. Any claims for interest on this amount will be handled in accordance with Section VII, *infra*, of this Order.

## VII. *Interest*

■ Plaintiff claims that she is entitled to interest on her half of the funds due her under the written separation agreement. The Court agrees. However, the Court is uncertain as to the amount of interest due. Plaintiff originally requested interest in the amount of $77,447.94. As of January 17, 1996, Plaintiff lowered her request for interest to $54,811.78. Plaintiff, however, offers only a generalized argument with no detailed calculations or other means for the Court to determine whether this amount is correct. Defendant contends that if any interest is owed, it should be calculated from date on which the judicial system within District of Columbia granted Plaintiff a "final judgment" on her contract claim, which occurred on August 5, 1996, when Defendant's request for a rehearing was denied. Only on that date, Defendant contends, was Plaintiff, if at all, entitled to her share of the lump sum payment. Plaintiff contends that the "interest" period began on December 15, 1989, when the Superior Court entered its order in this case.[11]

The parties are directed to attempt to settle this issue prior to re-filing another pleading with the Court. This matter has been dragged out over ten years. Based on the foregoing analysis, Plaintiff is entitled to her share of the principal portion of the lump sum payment that Defendant received in No-

---

**9.** Plaintiff further asserts that Defendant has never sought a writ of execution for the amounts allegedly owed by Plaintiff and that, under Georgia law, a judgment becomes dormant after seven years. Ga.Code Ann. § 9–12–60 (Michie 1993). However, pursuant to Georgia law, a dormant judgment can be revived by "an action or by scire facias." *Id.* at § 9–12–61. The Court finds that Defendant has maintained his right to the prior debt throughout these proceedings. Accordingly, the Court will not dismiss his claims simply by virtue of Plaintiff's dormancy argument.

**10.** Section 9–13–75 allows for the offsetting of judgments upon motion by a party. Ga.Code Ann. § 9–13–75 (Michie 1993). The Court treats both parties in this case, as a result of the representations in their respective briefs filed in support of their positions, as making cross-motions to the Court to offset the prior debts from 1986.

**11.** Plaintiff also asserts that although Defendant filed an appeal of the Superior Court's order of December 15, 1989, Defendant failed to properly "stay" that order by filing a supersedeas bond. The parties are, obviously, at opposite ends of the spectrum with respect to the appropriate interest period and interest calculations.

vember, 1986, in addition to the principle portion of the prior "offset" debt owed by Defendant, as well as interest on both sums.

If the parties are unable to settle the interest portion of this matter, they may re-file a memorandum with the Court outlining their respective positions *only* with respect to the interest portion of these sums. The parties must cite to and provide the applicable law and final interest amount claimed, supported by clear and concise calculations.

## CONCLUSION

The Court has considered both parties' motions for summary judgment. For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**, and Plaintiff's motion for summary judgment is **GRANTED**. Accordingly, Plaintiff is entitled to recover her rightful share of the principal portion of the lump sum payment that Defendant received in November, 1986, as well as her lump sum payment from the prior debts, together with appropriate interest on both sums.

The Clerk is directed to enter an appropriate judgment.