The **MEDICAL AND CHIRURGICAL FACULTY OF The STATE OF MARYLAND et al.**

v.

**AETNA U.S. HEALTHCARE, INC. et al.**

No. Civ.A. WMN–02–63.

United States District Court, D. Maryland.

June 28, 2002.

Joseph A. Schwartz, III, Pamela Metz Kasemeyer, Schwartz and Metz PA, Baltimore, MD, for Plaintiffs.

Daniel W. Nelson, Miguel A. Estrada, Gibson Dunn and Crutcher LLP, Washington, DC, for Defendants.

### *MEMORANDUM*

NICKERSON, District Judge.

Before the Court is Plaintiff's Motion to Remand Case to Circuit Court for Baltimore City. Paper No. 11. The motion is ripe for review. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary and the motion shall be granted.

This action was filed in the Circuit Court of Baltimore City as a class action on behalf of "all physicians who have provided medical services in Maryland to enrollees" of the Defendants. Defendants are three related Health Maintenance Organizations (HMOs). Plaintiffs assert that Defendants failed to comply with Maryland statutes that require HMOs to pay non-contracting physicians according to certain formulas.[1] While Defendants have paid Plaintiffs for their medical services, it has been at a rate below the rate dictated by those statutory formulas. In addition to bringing a cause of action under the statutes themselves, Plaintiffs assert claims for conversion and also seek relief under a theory of quantum meruit.

█ Defendants removed the action to this Court, arguing that Plaintiffs' claims were preempted under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). Noting that some of Defendants' enrollees are covered by the Federal Employee Health Benefit Act (FEHBA) and by Medicare, Defendants also contend that Plaintiffs' claims are preempted by FEHBA and the Medicare Act. Plaintiffs have moved to remand this action back to state court, on the ground that their claims arise solely under Maryland law and are independent of ERISA, FEHBA, or the Medicare Act. The Court agrees that remand is appropriate.

Courts have, with near unanimity, found that independent state law claims of third party health care providers are not preempted by ERISA. *See, e.g., In Home Health, Inc. v. Prudential Ins. Co. of America,* 101 F.3d 600, 606 (8th Cir.1996); *The Meadows v. Employers Health Ins.,* 47 F.3d 1006 (9th Cir.1995); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529 (11th Cir.1994); *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.,* 944 F.2d 752 (10th Cir.1991); *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990).

---

1. From 1991 to October 1, 2000, Md.Code Ann., Health–Gen. II § 19.710.1, provided that non-contracting physicians should be paid the "usual, customary, and reasonable" rate charged for the particular medical service. As of October 1, 2000, that section now provides that non-contracting physicians should be paid "the greater of: (A) 125% of the rate the health maintenance organization paid in the same geographic area, for the same covered service, to a similarly licensed provider not under written contract with the health maintenance organization; or (B) The rate as of January 1, 2000 that the health maintenance organization paid in the same geographic area, for the same covered service, to a similarly licensed provider not under written contract with the health maintenance organization."

Judge Moreno, in *In re Managed Care Litigation*, 135 F.Supp.2d 1253 (S.D.Fla. 2001),[2] summarized the rationale for declining to extend the preemptive reach of ERISA to claims of third party health care providers:

The preemption section [of ERISA] states that this federal statute "shall supercede any and all state laws insofar as they may now or thereafter relate to any employment plan" covered by ERISA. 29 U.S.C. §§ 1144(a). A state law "relates to" a covered employee benefit plan "if it has a connection with or reference to such a plan." *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), *quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

In *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994), the Eleventh Circuit agreed with the position of *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990), that "state law claims brought by health care providers against plan insurers too tenuously affect ERISA plans to be preempted by the Act." *Lordmann Enterprises*, 32 F.3d at 1533. In this case, the Provider Plaintiffs assert that they seek to enforce the terms and conditions of their own contracts with the Defendants, rather than assignments from ERISA beneficiaries. Amended Complaint, ¶¶ 297. *See also Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield*, 942 F.Supp. 562, 568 (S.D.Fla.1996) (claim not preempted where provider plaintiff brought suit in its independent status as a third-party rather than as an assignee of benefits). The Plaintiffs allege that the Defendants engaged in bundling and downcoding[3], actions which might sustain a breach of contract claim without a need for reference to the interpretation of ERISA plans. The Plaintiffs' state law contract claims therefore do not "relate to" the ERISA plans, and are not preempted by the Act.

The policy arguments set forth in *Memorial Hospital* and adopted by the Court in *Lordmann Enterprises* elucidate the wisdom of this result. First, preemption of provider contract claims would "defeat rather than promote" ERISA's goal to "protect the interests of employees and beneficiaries covered by benefit plans." *Lordmann Enterprises*, 32 F.3d at 1533. The Court theorized that as a result of preemption, health care providers could no longer rely as freely on the representations of insurers and would therefore act to protect themselves by denying care or raising fees. *Id.* Second, health care providers are not within the scope of ERISA. *Id.* Although employer and employees traded their right to bring a state cause of action in exchange for the benefits of ERISA, the statute does not provide a cause of action for health care providers

---

2. This Multidistrict Litigation action consolidates for pretrial proceedings the actions of several health care providers from various states against various HMOs, including Aetna. When Defendants removed the instant action to this Court, they indicated that they intended to "notify the MDL Panel that this case includes common questions of fact" with other suits transferred to Judge Moreno. Notice of Removal at 2. According to Plaintiffs, the Judicial Panel for Multidistrict Litigation determined that the instant action would not be transferred, despite Defendants' request. Motion to Remand at 3 n. 2.

3. "Bundling" is a process whereby the defendant HMOs are alleged to have arbitrarily reduced payments to providers by combining two or more procedures. 135 F.Supp.2d at 1257. "Downcoding" is an operation whereby the HMOs change the benefit codes entered on reimbursement forms by the providers in a manner designed to reduce payments due to those providers. *Id.*

who treat ERISA participants. In short, preemption of state law claims would leave health care providers with no viable civil remedy. *Id.* at 1533–34. *In re Managed Care Litigation,* 135 F.Supp.2d at 1267–1268.

Defendants posit two theories to lift this case out from under the holding of this well-established line of cases. First, Defendants argue that Plaintiffs claims are, in reality, based upon "colorable" or "involuntary" assignments of benefits under ERISA plans and thus, are "entirely derivative of their patients' right to benefits." Opp. at 4. The Court finds no such assignments. Plaintiffs are asserting in this action an independent statutory right of health care providers to receive payment consistent with the statutory formulas, not the right to any benefits due to plan participants. It is undisputed that these statutory rights are not available to plan participants, and thus, could not be assigned by those participants. In addition, since Maryland's HMO Act generally prohibits treating physicians from billing HMO patients for covered services, *see,* Md.Code Ann. Health–Gen II § 19–710(p),[4] those patients would have no reason to assign any rights to a provider. HMO patients have fully received their plan benefit, *i.e.,* covered health services, and are held harmless from any balance billing from the providers.

Defendants' second theory is that Plaintiffs' claims are preempted because they require interpretation of ERISA plan documents. As Plaintiffs seek payment for having rendered "covered services," *see* Complaint at ¶¶ 25, 34, 35, and as services are only "covered" if they are "included in the benefit package of the health maintenance organization," Md.Code Ann. Health–Gen II § 19–710.1(a)(3), Defen-

dants contend that HMO plan documents must be interpreted to determine Plaintiffs' entitlement to payment. Again, the Court disagrees. As Plaintiffs note, because Defendants have already paid the claims at issue, Defendants have already determined those claims to be for "covered services." What is at issue is the amount of payment, and the source for that determination is the statutes, not the HMO plans.

■ The Court also notes that, even if it should find that Plaintiffs' claims somehow fell within the reach of ERISA's preemption clause, those claims would, nevertheless, be "saved" from preemption under ERISA's "saving clause." 29 U.S.C. § 1144(b)(2)(A) (providing that nothing in ERISA's preemption clause "shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . ."). While Defendants argue strenuously that claims based on statutes regulating HMOs do not fall under the saving clause because there is "a clear distinction between HMOs and insurance companies," Opp. at 16, the Supreme Court's recent decision in *Rush Prudential HMO, Inc. v. Moran,* — U.S. —, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), seriously undercuts that position. In rejecting an argument similar to that raised here, the Court held that the Illinois HMO Act "regulated insurance" within the meaning of ERISA's saving clause because, while HMOs may exhibit the characteristics of health care providers, they also exhibit the characteristics of insurers. "Nothing in the saving clause requires an either-or choice between health care and insurance in deciding a preemption question, and as long as providing insurance fairly accounts for the application of state law, the saving

4. Section 19–710(p) provides that "individual enrollees and subscribers of health maintenance organizations . . . shall not be liable to any health care provider for any covered services provided to the enrollee or subscriber."

clause may apply. There is no serious question about that here, for it would ignore the whole purpose of the HMO-style of organization to conceive of HMOs ... without their insurance element." —— U.S. —— at ——, 122 S.Ct. 2151, 153 L.Ed.2d 375, 2002 WL 1337696 at *7.[5]

The Court finds Defendants' argument based on FEHBA and the Medicare Acts to be equally unavailing. By noting that some of the Aetna enrollees treated by Plaintiffs are or have been federal employees or retirees enrolled in plans governed by FEHBA, and assuming that Plaintiffs have included claims for those services in their Complaint, Defendants conclude that this action would be preempted under FEHBA. Similarly, Defendants note that, as Defendants served as a Medicare HMO in Maryland until December 31, 1998, some of Plaintiffs' claims would be preempted under Medicare's exclusive administrative scheme.

The Complaint, however, does not mention either FEHBA or Medicare, and Plaintiffs in their motion to remand, disavow any intent to bring claims for payment based upon service rendered to federal employees and retirees, or to Medicare participants. *See* Motion at 8 (acknowledging that, if the claim involved coverage for a FEHBA enrollee, the Aetna HMO would be the wrong defendant); Reply at 13 (stating that Plaintiffs "do not intend to present claims concerning Aetna's Medicare enrollees predating 1999 when Aetna no longer offered a Medicare HMO product in Maryland"). While the Complaint does state that this is a class action brought on behalf of "all Maryland physi-

cians," there is no reason to assume that it encompasses claims arising out of all services rendered to all Aetna enrollees, particularly when Plaintiffs have expressly disavowed that intent. This Court's jurisdiction is determined in light of the claims actually brought by Plaintiffs, not all claims that might have been joined.

For the above-stated reasons, Plaintiffs' motion to remand shall be granted. A separate order will issue.

### *ORDER*

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this day of June 2002, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion to Remand Case to Circuit Court for Baltimore City, Paper No. 11, is hereby GRANTED;

2. That the Clerk of the Court shall remand this action back to the Circuit Court for Baltimore City; and

3. That the Clerk of the Court shall mail or transmit copies of the foregoing Memorandum and this Order to all counsel of record.

---

**5.** Defendants also argue, as did the Defendant HMO in *Rush Prudential*, that the claims at issue implicate the exclusive remedial scheme of ERISA § 502, 29 U.S.C. § 1132, and thus, cannot be saved by the saving clause exception to the more general ERISA preemption clause found in ERISA § 514, 29 U.S.C. § 1144. Plaintiffs' claims, however, could

only be found to implicate the exclusive remedy scheme of § 502 if they are first found to be based on the assignment of the rights of plan beneficiaries or participants. Because the Court rejects Defendants' assignment theory, *see supra*, the Court does not find § 502 to be a bar to Plaintiffs' claims.